

FILED
2010 JUN 17 AM 9:58
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVINO HERNANDEZ, S. DE R.L. DE C.V., a Mexican corporation,<br><br>Petitioner,<br><br>vs.<br><br>SMART & FINAL, INC., a Delaware corporation,<br><br>Respondent. | CASE NO. 09-cv-2266 BEN (NLS)<br>(Consol. with Case No. 09-cv-2322)<br><br>ORDER DENYING PETITION TO VACATE ARBITRATION AWARD AND GRANTING CROSS-PETITION TO CONFIRM ARBITRATION AWARD |

This matter concerns an arbitration award dated July 9, 2009 (the "Award") by the International Chamber of Commerce, International Court of Arbitration (the "ICC"). The Award relates to a dispute between the parties arising from their joint business operations in Mexico. One of the business owners, Trevino Hernandez, S. DE R.L. DE C.V. ("Tre-Her") moves to vacate the Award. (Docket No. 1.) The other business owner, Smart & Final, Inc. ("SFI") opposes vacatur and moves to confirm the Award. (Docket No. 6.)

For the reasons set forth herein, the Court **DENIES** the Petition to Vacate Arbitration Award and **GRANTS** the Petition to Confirm Arbitration Award.

## RELEVANT BACKGROUND

Tre-Her is a Mexico corporation with a principal place of business in Tijuana, Baja California.

(Pet.,[1] ¶ 4.) SFI is a United States corporation incorporated under Delaware law, with a principal place of business in Commerce, California. (Pet., ¶ 5.)

On December 15, 1992, Tre-Her and SFI entered into a written Joint Venture Agreement (the "Agreement") wherein they agreed to form a Mexico corporation to establish and operate a chain of stores throughout Northwest Mexico, called Smart & Final de Noroeste S.A. de C.V. ("SFDN") (Pet., Ex. 1.) The Agreement provided that SFI could accomplish this "either directly or through a wholly owned subsidiary to be formed, Smart & Final de Mexico, S.A. de C.V. . . . ." (Pet., Ex. 1, pg. 2.) As such, SFI formed Smart & Final de Mexico, S.A. de C.V. ("Smart-Mex") which, together with Tre-Her, incorporated SFDN in Mexico.

The Agreement also contained an arbitration provision stating, in relevant part: "Any dispute, controversy... shall be finally settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce (ICC)." (Pet., Ex. 1, pgs. 29-30.) The Agreement contemplated a three-person arbitration panel with one person nominated by SFI, one person nominated by Tre-Her, and one person nominated by both parties, unless the parties could not agree, at which point the ICC would appoint that person. *Id.*

In 1993, SFDN opened its first store. (Pet., ¶ 10.) According to the parties, SFDN operated successfully over the next thirteen years, until a dispute arose in 2006 from an alleged failure to distribute profits. (Pet., ¶¶ 10-12.) According to Tre-Her, the dispute resulted in various civil actions that are still pending in Mexico's courts. (Pet., ¶¶ 14-21.) Those actions resulted in, among other things, the removal by Tre-Her of SFDN's Operations Director, Anthony Bernardini, and a judgment in favor of Tre-Her in the amount of $11,600,000 which allegedly represents the profits of SFDN that rightfully belong to Tre-Her. *Id.*

On November 7, 2007, SFI filed a Request for Arbitration with the ICC. (Pet., Ex. 6.) The Request asserted claims against Tre-Her arising from or related to the Agreement, including breach of contract, fraud and deceit. *Id.* Pursuant to the Agreement, SFI nominated Wayne I. Fagan as SFI's appointed arbitrator, Tre-Her nominated Stephen V. McCue as Tre-Her's appointed arbitrator, and,

---

[1] Unless otherwise stated, references to "Pet." or "P. & A." are to Tre-Her's Petition to Vacate Arbitration Award and supporting Memorandum of Points and Authorities, respectively.

because the parties could not agree on the selection of the third arbitrator, the ICC appointed Horacio Alberto Grigera Naon as Chairman of the panel. (Pet., Ex. 20.)

From January 20 to 22, 2009, pursuant to the Agreement, an Arbitration Hearing was held in San Diego, California. SFI presented eight fact and expert witnesses live at the hearing. (Pet., Ex. 20, ¶¶ 40-41.) Due to a scheduling conflict, Tre-Her agreed to a procedure under which its counsel cross-examined SFI's witnesses and introduced written statements from its on expert witnesses, but presented no witnesses live at the hearing. *Id.* Tre-Her claims it had intended to present an expert live at the hearing, but was not able to because it had scheduled its expert to appear on the last day of the arbitration, which it thought would be on day four of the arbitration, but the arbitration was completed on day three and Tre-Her was unsuccessful in rescheduling the expert. (P. & A. [Docket No. 1-1], pg. 7.)

On July 9, 2009, the arbitration panel issued its Award. (Pet., Ex. 20.) Chairman Grigera and Arbitrator Fagan decided in favor of SFI; Arbitrator McCue decided in favor of Tre-Her and wrote a dissenting opinion. (Pet., Exs. 20, 21.)

In the Award, the panel determined that, among other things, (1) Tre-Her violated the Agreement by unilaterally taking a "dividend" of over $11,600,000 from SFDN's accounts and was required to return the "dividend;" (2) Tre-Her violated the Agreement by unilaterally removing Anthony Bernardini from his position as Operations Director of SFDN; and (3) Tre-Her violated the Agreement by refusing to permit SFI access to SFDN's offices, books and records. (Pet., Ex. 20, ¶¶ 130-131, 135-136, 138-139, 153-157.)

In his dissent, Arbitrator McCue opined that SDFN and Smart-Mex were separate legal entities from SFI, and were indispensable and necessary parties to the action. (Pet., Ex. 21.) As such, the panel could not render the relief SFI sought absent SDFN and Smart-Mex's participation in the proceeding. *Id.* Mr. McCue opined the panel was limited to resolving disputes involving the alleged breach of Agreement. *Id.*

On October 13, 2009, Tre-Her filed its Petition to Vacate Arbitration Award in this Court. (Docket No .1.) On November 16, 2009, SFI filed an opposition and also filed a cross-petition to confirm the Arbitration Award. The cross-petition initiated a separate proceeding that was assigned

Case No. 09-cv-2322 in this Court. On December 1, 2009, the Court granted the parties' joint motion to consolidate the cases and designated this action as the lead action for all purposes. (Docket No. 7.)

The matter being fully briefed, the Court exercised its discretion to vacate the hearing date and decide the petitions on the merits, without oral argument. See CivLR 7.1.d.1.

## JURISDICTION AND VENUE

Although both parties concede jurisdiction and venue in this Court, the Court has an independent duty to analyze these issues. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing.").

### I.      JURISDICTION IN THE UNITED STATES

The Inter-American Convention on International Commercial Arbitration, 9 U.S.C. § 301 *et seq.* ("Inter-American Convention"),[2] requires courts of member nations to give effect to private agreements to arbitrate and to recognize and enforce arbitration awards made in other member nations. 9 U.S.C. §§ 303, 304. The United States and Mexico are both members of the Inter-American Convention. 4 Thomas H. Oehmke, *Commercial Arbitration* § 175:8 (2010).

The Inter-American Convention incorporates several provisions of a similar treaty known as the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), 9 U.S.C. § 201 *et seq. See* 9 U.S.C. § 302. Most notably, the Inter-America Convention incorporates Sections 202, 203 and 204 of the New York Convention, which govern jurisdiction and venue. *Id.*

Section 202 of the New York Convention, as incorporated by reference in the Inter-American Convention, provides that United States district courts are vested with original jurisdiction over any action or proceeding "falling under the Convention," as such action is "deemed to arise under the laws and treaties of the United States. 9 U.S.C. § 203. An arbitration award "falls under the Convention" where the award (1) arises out of a legal relationship; (2) that is commercial in nature; and (3) which

---

[2] Also known as the Panama Convention. *Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 395-96 (7th Cir. 2002).

is not entirely domestic in scope. 9 U.S.C. § 202. The term "domestic" refers to the domiciliary or principal place of business of the parties and not just to the location where the arbitration award was issued. *Bergeson v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2nd Cir. 1983); *see also Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 932 (N.D. Cal. 2003). Therefore, the New York Convention, and hence the Inter-American Convention, may still apply where, as here, the arbitration award was issued in the United States.

Courts have consistently held that "any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention." *Yusuf Ahmed Alghanim & Sons v. Toys 'R' Us, Inc.*, 126 F.3d 15, 22-23 (2nd Cir. 1997) (internal citation omitted); *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998) ("all arbitral awards not 'entirely between citizens of the United States' [are] 'non-domestic' for purposes of Article I of the Convention.")

The dispute in this case arises from Tre-Her's alleged breach of an agreement concerning the parties' business operations. As such, the Court finds that the Award, which resolves the dispute, arises out of a legal relationship that is commercial in nature. The Court also finds the Award is not entirely domestic in that it concerns a domestic corporation, i.e., SFI, on one hand, and a non-domestic corporation, i.e., Tre-Her, on the other hand. Accordingly, the Court finds that the Award falls under the Convention for purposes of the Inter-American Convention and, therefore, jurisdiction in the United States is proper.[3]

## II.    JURISDICTION AND VENUE IN THIS COURT

The issue is now whether jurisdiction and venue is proper in the Southern District of California.

Section 204 of the New York Convention, as incorporated by reference in the Inter-American Convention, provides "An action or proceeding over which the district courts have jurisdiction pursuant to Section 203 of this title may be brought in . . . such court for the district and division which

---

[3] The Court also finds jurisdiction exists under the New York Convention. However, because both parties are from nations that have ratified or acceded to the Inter-American Convention and are members of the States of the Organization of American States, the Inter-American Convention governs. *See* 9 U.S.C. § 305; *see also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 802 F.Supp. 1069 (S.D.N.Y. 1992), *rev'd on other grounds*, 991 F.2d 42 (2nd Cir. 1993).

embraces the place designated in the agreement as the place of arbitration if such place is within the United States." 9 U.S.C. §§ 204, 302. The Agreement designated San Diego, California as the place of arbitration and, in fact, the Award was issued by the ICC while sitting there. (Pet., Exs. 1, 20.) Accordingly, jurisdiction and venue is proper in the Southern District of California.

## DISCUSSION

### I.  STANDARD OF REVIEW

"The Inter-American Convention incorporates the [Federal Arbitration Act's] terms unless they are in conflict with the Inter-American Convention's terms." *Productos Mercantiles E. Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2nd Cir. 1994); see also 9 U.S.C. § 307. The Federal Arbitration Act's ("FAA's") terms regarding confirmation, vacatur and modification of an arbitration award under 9 U.S.C. §§ 9, 10 and 11, respectively, do not conflict with the Inter-American Convention's terms. 9 U.S.C. § 307; *Alghanim*, 126 F.3d at 20-23. As such, a court applying the Inter-American Convention, such as this one, may confirm or vacate an arbitration award on the grounds set forth in the FAA. 9 U.S.C. §§ 10(a), 307.

Section 9 of the FAA provides that "at any time within one year after the award is made any party to the arbitration may apply to the court... for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added). The petitions in this case were filed within one year of the Award; therefore, the only remaining issue is whether grounds exist to vacate, modify or correct the Award.

The Ninth Circuit has clearly stated,

> The Federal Arbitration Act, 9 U.S.C. §§ 1-6, enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard.

*Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 994 (9th Cir. 2003).

Section 10 of the FAA provides that a court "may make an order vacating the [arbitration] award... (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty

of misconduct in refusing to postpone the hearing. . . or in refusing to hear evidence. . .; or (4) where the arbitrators exceeded their powers. . ." 9 U.S.C. § 10(a).

For the reasons set forth below, the Court finds that no grounds exist to vacate, modify or correct the Award.

## II. THERE ARE NO GROUNDS FOR VACATUR UNDER 9 U.S.C. § 10(a)(4)

An arbitrator exceeds his or her power where the award is "completely irrational" or exhibits a "manifest disregard of law." *Kyocera,* 341 F.3d at 997 (internal citation omitted). "Manifest disregard... requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Bosack v. Soward,* 586 F.3d 1096, 1104 (9th Cir. 2009), *cert. denied* 130 S.Ct. 1522 (2010).

Tre-Her argues the ICC arbitrators exceeded their power because the dispute did not fall within the Agreement's arbitration provision. Specifically, Tre-Her argues the dispute concerned SFDN and Smart-Mex, and, because those entities were not signatories to the Agreement, any purported arbitration provision set forth therein did not apply. This same argument was presented to, and rejected by, the ICC. (Pet., Ex. 20., pg. 20.)

The ICC rejected Tre-Her's argument, stating in relevant part,

> the JVA Agreements set forth the terms and conditions directly governing the relationship of the Parties and their reciprocal rights and obligations relating to their joint venture and must be read and construed as one single unit. Any infringement by a JVA Party of provisions found either in the JVA, its Exhibit "A" or the SFDN Charter necessarily becomes a violation of the JVA Agreements considered as a whole and entitles the other JVA Party to directly seek relief for breach of contract against the one in breach.

(Pet., Ex. 20, at ¶ 107.)

In sum, the ICC recognized that, although the Agreement was entered into between SFI and Tre-Her, the Agreement expressly permitted SFI to establish and operate SFDN through a separate, newly formed entity known as Smart-Mex. (Pet., Ex 1., pg. 2.) Therefore, SFI had the right to arbitrate disputes involving Smart-Mex and SFDN through ICC arbitration.

The Court notes that, consistent with federal common law requiring enforcement of arbitration agreements, the issue of whether a claim involving a non-signatory is referable to arbitration must be

decided by reference to the agreement containing the arbitration clause that is executed by the signatories. *Fisser v. Int'l Bank*, 282 F.2d 231, 233 (2nd Cir. 1960). The agreement must be interpreted according to ordinary principles of law and equity, with due regard given to the federal policy favoring arbitration, and any ambiguity as to the scope of the arbitration clause resolved in favor of arbitration. *Id.* In applying these principles, the reviewing court must also afford great deference to the arbitration panel's interpretation and determination of its own jurisdiction and the arbitrability of the dispute. *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344-45 (2nd Cir. 2010); *see also Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989) ("an arbitrator's interpretation of the scope of the issue submitted to him is entitled to the same deference accorded his interpretation of the [] agreement.").

As noted, signatories as well as nonsignatories of an arbitration agreement may be bound by the agreement based on ordinary contract and agency principles. *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986). Among these principles are: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir.1995)).

Although Smart-Mex is not a signatory to the Agreement (which contains the arbitration clause), the Agreement identifies Smart-Mex as a wholly-owned subsidiary of SFI, formed for the purpose of creating SFDN with Tre-Her. (Pet., Ex. 1, pg. 2.) Subsequent provisions of the Agreement set forth various rights and duties of both SFI and Smart-Mex. (*See, e.g., Id.* at pgs. 3, 5, 9) Tre-Her was a signatory to the Agreement and, therefore, knew of and consented to the formation and participation of Smart-Mex for this purpose. Additionally, based on the parties' petitions, it is clear that any claims asserted by or against Smart-Mex would be the same as those asserted by or against SFI in this case. As such, the Court finds Tre-Her is estopped from denying SFI the benefit of the arbitration clause in this case. *See, e.g. Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) (holding that because claims against nonsignatory entity were "intimately founded in and intertwined with" a contract containing an arbitration clause, signatory was estopped from refusing to arbitrate those claims); *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*,

659 F.2d 836, 840-41 (7th Cir. 1981) (finding signatory equitably estopped from repudiating arbitration clause in agreement on which lawsuit against nonsignatory was based). Because the Court finds Tre-Her is estopped from contesting SFI's standing, the Court need not address the other contract and agency principles, including whether it can pierce the corporate veil to confer standing, as those issues are moot.

The absence of SFDN as a party in this case is also not fatal to the enforcement of the arbitration clause. As recognized by the ICC, SFI's claims are based on its contract with Tre-Her, and not on Mexico company law. Whether Smart-Max institutes an action against SFDN as the shareholder of SFDN is not a matter before this Court and is not a circumstance depriving SFI of standing to pursue its claims in arbitration.

In light of the above, the Court finds the ICC's decision that the arbitration clause in the Agreement covers the dispute and SFI had standing to arbitrate the claims was not completely irrational or a manifest disregard of the law. As noted, the ICC's decision is entitled to substantial deference. "As long as [an arbitration ruling] draws its essence from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it." *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir.1996). The ICC's interpretation of the Agreement (and the arbitration clause set forth therein) in this case was, at a minimum, plausible. Accordingly, the Court finds the ICC did not exceed its powers under the Award.

### III.   THERE ARE NO GROUNDS FOR VACATUR UNDER 9 U.S.C. § 10(a)(2)

Tre-Her claims there was "evident partiality" by Arbitrator Fagan for purposes of 9 U.S.C. § 10(a)(2) because Arbitrator Fagan was the U.S. Chair of the U.S.-Mexico Bar Association, while at the same time a partner at Haynes Boone LLP ("Haynes Boone"), one of the law firms representing SFI, served as the U.S. Vice-Chair of the U.S.-Mexico Bar Association. (P. & A., pg. 24; Pet., Ex. 10.) Tre-Her acknowledges that, at the time of appointment, Arbitrator Fagan disclosed he was "involved in various bar association activities with lawyers in the Haynes & Boone law firm but none involved in this matter." (Pet., Ex. 10.) Tre-Her claims, however, that this disclosure was insufficient because Arbitrator Fagan should have disclosed his specific position as chair vis-a-vis the Hayne Boone's

partner's position as vice-chair. This argument was presented to, and rejected by, the ICC. (See Pet., Ex. 10; see also Pet., Ex. 20, ¶ 13.)

      Although disclosure enables parties to select an arbitrator intelligently, courts are reluctant to set aside awards on the basis of nondisclosure alone. *Toyota of Berkeley v. Automobile Salesman's Union, Local 1095*, 834 F.2d 751, 755 (9th Cir. 1987). Rather, "[e]vident partiality is present when undisclosed facts show a reasonable impression of partiality." *Schmitz v. Zilveti*, 20 F.3d 1043, 1046-47 (9th Cir. 1994) (vacating award where arbitrator failed to disclose his law firm's prior representation of arbitrating party's parent corporation). "[T]he possibility of bias [must be] direct, definite and capable of demonstration rather than remote, uncertain and speculative." *See Middlesex Mutual Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (4th Cir.1982); *see also Schmitz*, 20 F.3d at 1046 (citing *Levine* with approval).

      Situations involving "evident partiality" for purposes of 9 U.S.C. § 10(a) include an arbitrator's financial interest in the outcome of the arbitration, *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985), an arbitrator's failure to disclose prior consulting work for a party, *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 146 (1968), a family relationship that made the arbitrator's impartiality suspect, *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 85 (2nd Cir. 1984), an arbitrator's former employment by one of the parties, *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 677 (7th Cir. 1983), and an arbitrator's employment by an entity represented by one of the parties' law firms, *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1149 (10th Cir. 1982).

      Those facts are not present here. Tre-Her does not cite any financial or personal relationship between Arbitrator Fagan, the partner at Haynes Boone, or the outcome of the arbitration. There is also no evidence of an employment or familial relationship between Arbitrator Fagan, the partner at Haynes Boone, or any other party to the arbitration. At most, the evidence shows a passive relationship between Arbitrator Fagan and one who is only indirectly, if at all, associated with the case. These circumstances are not sufficient to justify vacatur. *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150 (1968) (recognizing that arbitrators who are often effective because of their connections to the marketplace should not be disqualified automatically by

a business relationship with parties that is trivial); *Apusento Garden (Guam) Inc. v. Superior Court*, 94 F.3d 1346, 1352-53 (9th Cir. 1996) (holding arbitrator's failure to disclose that arbitrator and expert witness for party were "passive investors in a limited partnership" was insufficient to create a "reasonable impression of possible bias"). Accordingly, the Court concludes that whatever possible bias exists from the two individuals serving as board members of the same bar association is too remote, uncertain and speculative to rise to the level of "evident partiality" for purposes of 9 U.S.C. § 10(a)(2).

That Fagan may have requested Tre-Her's expert to testify live one day earlier in the arbitration proceeding also does not evidence "evident partiality." Absent some sort of overt misconduct, a disappointed party's perception of rudeness by the arbitrator is not the sort of "evident partiality" contemplated by the FAA as grounds for vacatur. *Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, 21 (2nd Cir. 1962). Additionally, because "the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings." *Fairchild & Co., Inc. v. Richmond, F. & P.R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981); *Sheet Metal*, 756 F.2d at 746 (citing *Fairchild* with approval). The Court notes that Arbitrator Fagan also did not act alone; rather, according to Tre-Her, Chairman Grigera, the neutral, third arbitrator appointed to the panel, also acted to expedite the arbitration hearing. (P. & A., pg. 7; see also Pet., Ex. 20, ¶ 19.)

Fagan's vote in favor of SFI also does not rise to the level of "evident partiality" justifying vacatur. Evident partiality is "not demonstrated where an arbitrator consistently relies upon the evidence and reaches the conclusions favorable to one party. . . the mere fact that arbitrators are persuaded by one party's arguments and choose to agree with them is not of itself sufficient. . ." *Fairchild*, 516 F.Supp. at 1313 (citing *Bell Aerospace Co. v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir. 1974).

In light of the above, the Court finds there are no grounds for vacatur under 9 U.S.C. § 10(a)(2).

### IV. THERE ARE NO GROUNDS FOR VACATUR UNDER 9 U.S.C. § 10(a)(3)

Tre-Her argues the rescheduling of its expert was tantamount to a refusal to hear evidence because Tre-Her's expert was unable to rearrange his schedule to appear live on the new date and the

1 arbitrators refused to take his scheduling conflict into account.

2 Vacatur on the grounds of refusal to hear evidence is only justified "if the exclusion of relevant evidence deprive[d] a party from a fair hearing." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 364 F.3d 274, 301 (5th Cir. 2004). "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award. A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings." *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985)).

In this case, Tre-Her concedes that its expert, as well as SFI's expert, were each permitted to, and did, present written expert statements to the arbitrators. This procedure appears to conform with the Arbitration Tribunal's "Procedural Order No. 1" which directs each party presenting experts to submit a written statement from its expert, after which live testimony is permitted "so long as the opposing Party has called for cross-examination of such witness." (Petition to Confirm Arbitration Award, Ex. E, ¶¶ 4, 14.) "Fact and expert written witness statements shall serve as examination in chief in lieu of direct testimony at the Hearing." (*Id.* at ¶ 14.) It is clear, therefore, that an expert's written statement, such as the written statement presented by Tre-Her's expert in this case, is intended to be the sole means by which a party presents its expert's opinion;[4] live testimony is intended merely to benefit the opposing party by way of cross-examination and the arbitrators who are allowed to pose questions at any time. *Id.*

Although Tre-Her did not present its expert live at the hearing, and therefore did not make its expert available for cross-examination by SFI, the parties and the arbitrators consented to this deviation of Procedural Order No. 1 and permitted Tre-Her to submit its expert's written statement nonetheless. In fact, the arbitrators considered the expert's opinion in the Award. (Pet., Ex. 20, ¶ 41.) That the arbitrators refused to continue the arbitration hearing for an additional day to allow the expert's live testimony is not grounds for vacatur, as it is within the arbitrators' power to control the proceeding and expedite matters, as appropriate. *Fairchild*, 516 F. Supp. at 1313; *Sheet Metal*, 756 F.2d

---

[4] Although the expert is also allowed a fifteen minute presentation of its opinion at the hearing, that presentation is restricted to a summary of its written statement. (Petition to Confirm Arbitration Award, Ex. E, ¶ 14.)

at 746 (citing *Fairchild* with approval).

Because Tre-Her was permitted to present its expert's opinion by way of written statement, and in fact such opinion was considered by the arbitrators, the Court finds Tre-Her was not deprived its right to a fair hearing. Accordingly, no grounds exist for vacatur under 9 U.S.C. § 10(a)(3).

### V. THERE ARE NO GROUNDS FOR VACATUR UNDER 9 U.S.C. § 10(a)(1)

Tre-Her alleges the Award was procured through undue means because SFI failed to disclose that its expert on Mexico law "was or had been a partner of one of the attorneys for SFI." (P. & A., pg. 26.) Similar to its claim against Arbitrator Fagan, Tre-Her claims that SFI's failure to disclose this relationship created a false impression of impartiality: "as a matter of fundamental fairness, [disclosure] should have been made." *Id.*

Vacatur due to "corruption, fraud, or undue means" requires more than unfair conduct. Rather, the Ninth Circuit has held that vacatur for "undue means" requires behavior that is immoral, if not illegal. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992). Additionally, a nexus must exist between the alleged fraud and the basis for the arbitrator's award, as 9 U.S.C. § 10(a) "does not provide for vacatur in the event of any fraudulent conduct, but only 'where the award was procured by corruption, fraud, or undue means.'" *Forsythe International, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990); *see also McCollough*, 967 F.2d at 1404 (the same test for "fraud" applies to "undue means" under 9 U.S.C. § 10(a)(1)). "The requisite nexus may exist where fraud prevents the [arbitrator] from considering a significant issue to which [he] does not otherwise enjoy access." *Id.*

In this case, even if an underlying business or other relationship existed between SFI and its expert, there is no evidence or connotation of illegality or immorality for purposes of 9 U.S.C. § 10(a)(1). *McCollough*, 967 F.2d at 1404. Tre-Her presents no other evidence or authority showing that the failure to disclose such a relationship in this case rises to the level of fraud or undue means to justify vacatur. Accordingly, the Court finds there are no grounds for vacatur under 9 U.S.C. § 10(a)(1).

///

///

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Petition to Vacate Arbitration Award and **GRANTS** the Petition to Confirm Arbitration Award.

**IT IS SO ORDERED**.

Date: June 16, 2010

Hon. Roger T. Benitez
Judge, United States District Court